<div style="margin-left:left">MURPHY<br>v.<br>GUITEREZ.</div>

agent and property in the State, when proceedings against both were *im-mediately* commenced and process served. Till the plaintiff's action was instituted, it was impossible for him to act.

He invokes the equitable rule, " *contra non valentem agere non currit pre-scriptis*," and it must prevail.

See the cases of *Morgan* v. *Robinson*, 12 Mar. 76 (old series); *Landry* v. *L'Eglise*, 3 La. 221; *Guilliet* v. *Erwin*, 7 La. 581; *Smith* v. *Taylor*, 10 Rob. 133; *Martin* v. *Jennings*, 10 A. 553; *Boyle* v. *Mann*, 4 A. 170; *Reynolds* v. *Batson, Same* v. *Brenford*, 9 A. 729.

It is therefore ordered, adjudged and decreed, that the judgment of the District court be affirmed, with costs in this court, to be paid by the defendant and appellant.

---

### A. F. COCHRAN & HALL *v.* BARK CLEOPATRA et als.

Carriers are not liable for damages occasioned by accidental and uncontrollable events.

APPEAL from the Sixth District Court of New Orleans, *Howell, J.* *C. Roselius* and *A. Philips* for defendants.

*J. Ad. Rozier for plaintiffs and appellants.*—This is a suit to recover damages by reason of a breach of the contract of affreightment. Plaintiffs, on the 21st of December, 1859, shipped on board the Cleopatra, at Marseilles, for the port of New Orleans, a certain quantity of walnuts, to be delivered in the port of New Orleans.

*P. E. Caillot* deposes that, as a merchant at Marseilles, he shipped the walnuts in good order and condition. The shipment began on the 16th, and was completed on the 19th December, 1859. The vessel was first advertised to leave from the 5th to the 10th day of December. The vessel sailed on the 8th February, 1860. She was first advertised to sail on the 8th of November, 1859. In consequence of the captain delaying or refusing to depart, he made a protest. He was informed by the ship brokers that the Cleopatra would sail at Christmas, the farthest; the weather was not unfavorable; parcels of walnuts, proceeding from the same lot, purchased and shipped at the same time, among which twenty-five bales sent to New York, by the Ella Cooper, arrived in good condition.

Carrier bound to deliver within reasonable time. *Rathbone* v. *Neal*, 4 An. 563.

1. The master of the vessel was in default; he should have sailed on the day advertised. No custom, attempted to be proved, can exonerate him from the responsibility; he was bound to keep his promise, made in the advertisement. On the 5th day of December, a protest was made by the shippers, wherein it is established " that he shipped goods on board of the Cleopatra, on the 1st day of December, on the promise made by

the ship's agents, that she would sail positively on the 5th day of Decem- <span style="float:right">COCHRAN& HALL<br>*v.*<br>BK. CLEOPATRA.</span> ber; that, instead of sailing on that day, she remained in port till the beginning of February, 1860.

There was a special promise made to the shipper, as to the time of departure, otherwise he would not have shipped them.

The weather did not prevent the Cleopatra from sailing, as it will be seen by the testimony of *Alby*. The ships are named that sailed in December and January. See also *Aicard*, who deposes substantially to the same facts, and adds: "The Cleopatra might have taken her cargo in twenty-five or thirty days; the weather was not the cause of the delay."

The judge of the lower court errs in saying: "There was a delay, beyond the anticipated time, of about 18 or 20.... He forgot that the testimony of the witnesses, who swear that the special promise made *was the 5th of December!* This is not contradicted. From the evidence it appears the Cleopatra was detained upwards of two months.

2. Was there any excuse for this delay? The judge says, it is accounted for by wind, bad weather, difficulty in shipping a crew, and sickness of the captain, and in the further difficulty of immediately procuring a full miscellaneous cargo in the port of Marseilles.

We think that the evidence shows a different state of facts. As to the weather, the fact of the departure of other vessels shows that there was no such cause. The difficulty in shipping a crew is hard to believe, in such a port as Marseilles. There is no evidence substantiating this in anything of a satisfactory manner; it is an after-thought. Sickness of the captain? How is this proved? The further difficulty in procuring a cargo? But the vessel was advertised to start on a particular day, and it does lie in the mouth of the master to say, that he did not mean it. Our witnesses are the well known and respectable business men of Marseilles.

The first witness of the defendant is the mate; and the bias of this man, in the employment of defendant, is apparent. He talks of the inclemency of the weather! forgets the departure of other vessels. He makes the statement that the walnuts arrived in New Orleans, in apparent good order; flatly contradicted by witnesses *Graus, Cazaire, Trinchard.* Their next witness is *Olivari;* also *Bartolomeo Olivari.* What they say is exaggerated, as to the time it takes a vessel to load in Marseilles, and has no bearing on the point at issue here. The master undertook to sail on a day fixed. Their other witnesses are *Gueralamo, Lavarelli* and *Bartholomo,* sailors, like the others, and attribute the delay to stress of weather.

If this was the fact, how is it that the master did not prove it by witnesses of known respectability in Marseilles, instead of resorting to biased sea-faring men? We have established a different state of facts by persons residing in Marseilles.

3. Had the master departed at the time promised, the walnuts would have arrived here, sound, in the port of New Orleans. It was all the fault of the master; he is bound to repair the damage. The amount of damages sustained will appear by the testimony of *Graus, Cazaire, Trinchard, Gregorio.* The walnuts, when they arrived, were heated and rancid. They had no appearance of being damaged by salt water; they were full of worms. The sale was properly advertised.

COCHRAN & HALL    HYMAN, C. J.    Plaintiffs shipped on 21st of December, 1859, in the
BK. CLEOPATRA. port of Marseilles, on the bark Cleopatra, a number of bales of walnuts,
to be delivered at New Orleans.

They sued to recover the loss resulting from the damaged condition of the walnuts.

The lower court gave judgment against plaintiffs, and they have appealed.

On the 9th February, 1860, the bark left Marseilles, and arrived in New Orleans about the 13th of June, 1860. The voyage is usually made in forty-five or fifty days; but the Cleopatra took four months to complete it. This is accounted for by a severe gale, on the 10th of February, which so disabled the bark that she had to make for the first port to be repaired. The time consumed in repairing her was about fifty days. She then continued on her voyage. It is not pretended that she was not sea-worthy when she left Marseilles, or that the walnuts were not properly stored. The evidence satisfies us that the walnuts were damaged, being of a perishable nature, by the length of time consumed in the voyage.

Plaintiffs contend that the damage was caused by unnecessary delay at the port of Marseilles.

It is in evidence that it takes much time in loading vessels at that port; sometimes three months or more. They have to be loaded by means of lighters.

The mate testified that the delay in taking in the cargo of the Cleopatra was caused by bad weather, and that she was loaded as speedily as possible.

There is no proof that the delay in the port of Marseilles was the cause of the damage.

The probability is that the vessel would have delivered the walnuts in good order but for the storm at sea.

Defendants are not liable for damage occasioned by accidental and uncontrollable events. C. C. 2725.

Judgment affirmed.

HOWELL, J., recused.